SEAN REIS - SBN 184004
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

WILL HASELDEN (*pro hac vice to be filed*)
whaselden@edelson.com
BENJAMIN H. RICHMAN (*pro hac vice to be filed*)
brichman@edelson.com
Edelson McGuire LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Fax: (312) 589-6378

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OLUWASEUN FASUGBE and LUKE HUCKABA, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>1524948 ALBERTA LTD., a Canadian corporation d/b/a TERRA MARKETING GROUP d/b/a SWIPEBIDS.COM, and JOHN DOE,<br><br>*Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiffs, Oluwaseun Fasugbe and Luke Huckaba, bring this Class Action Complaint

against 1524948 Alberta Ltd. d/b/a Terra Marketing Group, d/b/a Swipebids.com ("Swipebids"),

and John Doe Defendant based upon Defendants' practice of deceptively marketing and billing

Plaintiffs, and a class of similarly situated individuals, for online auction currency.  Plaintiffs, for

COMPLAINT

their Class Action Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their own attorneys.

## Parties

1.     Plaintiff Oluwaseun Fasugbe is a resident of Sacramento, California.

2.     Plaintiff Luke Huckaba is a resident of San Antonio, Texas.

3.     Defendant 1524948 Alberta Ltd. d/b/a Terra Marketing Group, is a seller of online auction currency, or "bids," and products on an online website it created and maintains for that purpose. 1524948 Alberta Ltd. operates from Canada, with its headquarters and principal place of business at 85 Cranford Way, Suite 204, Sherwood Park, Alberta, Canada, T8H 0H9. 1524948 Alberta Ltd. does business online throughout the State of California and the United States.

4.     John Doe Defendant is an online advertising network that directly participates in the acts and practices alleged herein.  John Doe Defendant, through the use of deceptive sponsored links, online pages, and its own contract publishers, drives consumers to the online landing pages of Defendant Swipebids.

## Jurisdiction and Venue

5.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

6.     Venue is proper in this District under 28 U.S.C. § 1391(a) as the injury arose in this District.  Venue is additionally proper because Defendants transact significant business in this District, including soliciting consumer business, and entering into consumer transactions.

COMPLAINT

**Facts Common to All Counts**

7.     With wages stagnant and disposable income tight, Americans are suffering through the worst economy in decades.  In these hard times, online auction sites at which consumers may bid for and receive apparently inexpensive merchandise have proliferated. Online, consumers reach these auction sites from initial representations made in sponsored links on search and social network pages, banner ads on Internet search pages, and through links in fake news articles and fake blogs. The purpose of each of these initial representations is to drive consumer traffic to credit card submit landing pages at which a consumer provides her credit/debit card information to facilitate payment for bids and products.

8.     Commonly, consumers register a method of payment and thereafter may purchase bids and participate in bidding on items offered.

9.     Initial representations found on websites that ultimately link to Swipebids's pages often appear in forms substantially similar to the following:

SHOCKING: $100 Walmart Gift Card for $6.39
BREAKING NEWS: High ticket items are being...
www.ctips.net

---

SHOCKING: 2010 Honda Civic for $1,732.09
Breaking News: Is this a Scam? You WON'T believe what we found!
www.ctips.net

---

42" LCD TVs for $29.46 in Chicago?
Are these prices real? YES! You Won't Believe What We Found!
News8Reports.com [1]

---

[1]     The word "Chicago" is dynamically inserted into this link by ("geo_ip") code that recognizes the IP address of the viewing consumer's computer and instructs the page to load and show this locale.

COMPLAINT

1  10.     These sponsored links route consumers either directly to a Swipebids page or to a

2  page created by the publisher who placed the above links.  Publisher pages work to accelerate the

3  desire to bid and often appear as news articles or blog reports containing testimonials of users and

4  trademarks of reputable news organizations.  The page below loads on a consumer's screen with a

5  video insert that describes the great value found in the Swipebids auction program.



---

2 The photograph of a news reporter in the above ad is, in fact, a photograph of a French journalist, Melissa Theuriau, who, on information and belief, has never reported on Swipebids in any sort of

11.     A publisher page often describes a "bonus offer" upon "Sign Up!" and, after

scrolling down, a consumer views a heading that states the following:

### "An In-Depth Explanation of How SwipeBids Works

1.     Register and Purchase bids by buying a bid pack**."**

12.     Notably, the page does not contain a disclosure that a consumer is required to

purchase a membership before they may participate in the bidding process.



media, video, print, web or otherwise.  It is likely that this photograph was stolen from this web
page, http://www.yousaytoo.com/Anwar/the-worst-most-beautiful-news-reporter/8845.

the "Buy It Now" option, the user would subtract the $30 spent on bids for the item from its $50 value price, paying the $20 difference. That way, even though they didn't win, all bids placed on the SwipeBids auction count as credit towards buying the product.

If you're looking for a deal, SwipeBids and other penny auction websites, might be the best way to snag an amazing bargain these days.

**Sign Up at SwipeBids Now!**



"...I won the auction I called customer support to find out when I would receive it. They told me in 3 days. I actually received it in 2! I am very happy with my SwipeBids experience"
- Kate / New York

## Comments (14 out of 173)

**Read Responses For:** "Penny Auction Website SwipeBids.com Saves Consumers up to 95% off Retail"

**Sissydad says:**                                                    Friday, August 20, 2010

What determines when an auction ends? It seems like the timer is reset back to 10 seconds as people continue to bid, then suddenly the auction is over and the item is SOLD even though people are still bidding, right!? So, at some point, does the auction just end regardless of whether bids are still be entered? Thanks.

**Jill@SwipeBids says:**                                              Friday, August 20, 2010

The timer is reset each time a person bids, therefore, an auction ends when no one else bids. It never ends when people are still bidding. We want everyone to have a fair chance.

**Mikey says:**                                                       Friday, August 20, 2010

Thanks for the info. I just got registered and I already won my first auction!

**Jill@SwipeBids says:**                                              Thursday, August 19, 2010

Congratulations! Isn't winning fun?!

**Cathy says:**                                                       Thursday, August 19, 2010

are the items we purchase brand new? open box items? refurbished items? If defective, can they be returned to the manufacturer under warranty?

**Jill@SwipeBids says:**                                              Thursday, August 19, 2010

All products we purchase should be new and factory sealed. If you ever get a defective item, let us know immediately and we'll work out the issue - new product or a refund.

**Damo says:**                                                        Wednesday, August 18, 2010

I still do not understand payment. If I win the bid, do I owe anything else?

**Jill@SwipeBids says:**                                              Wednesday, August 18, 2010

If you win the auction, you then pay that ending price, plus any shipping.

**Steve says:**                                                       Tuesday, August 17, 2010

What's the formula for the final cost of an item?

**Jill@SwipeBids says:**                                              Tuesday, August 17, 2010

You can look at it this way: Say you are going for a $200 item. You place 20 bids ($12) and the ending auction price is $25. You then have spent $37 for a $200 item, plus whatever the shipping cost. Shipping just varies per product/vendor.

COMPLAINT

3



**Jill@SwipeBids says:**                                    Monday, August 16, 2010

If you bid and no one else does, then yes, you've won the auction. Everyone has the same/fair chance to bid. So if they all just choose to not bid, then that works in your favor.

**Tiffany says:**                                          Monday, August 16, 2010

Is this only a live Auction site or can you bid like you would on eBay?

**Jill@SwipeBids says:**                   Monday, August 16, 2010Sunday, August 8, 2010

We are a live auction site. Feel free to check out the Help, New to SwipeBids, section for a full breakdown of how we work. Our bidding process is quite different than that of eBay.

**Leave A Reply**

Comments will appear after approval by our editorial team. Thank you.

Name:
City:
Email:
Message:

Submit

© All Rights Reserved.

CAREFULLY READ AND AGREE TO PURCHASE TERMS BELOW BEFORE ORDERING:

Terms and Conditions

The following Terms & Conditions shall apply to the relationship between SwipeBids LLC, www.SwipeBids.com ("SwipeBids"), and the end user ("You" or "Your"). By using SwipeBids's services, You accept the following Terms and Conditions, as well as the manner in which SwipeBids operates. These Terms & Conditions constitute the entire agreement between SwipeBids and You, and supersede and replace all prior commitments, undertakings or representations, whether written or oral, between You and SwipeBids with respect of Your use of SwipeBids.com on SwipeBids, such as the "Help" or "About Us" sections, are only recommendations and are not intended as rules or guidelines. SwipeBids is not liable or responsible for the actions of users or other individuals who have read or been informed of such information or other written material. SwipeBids will follow all local tax legislation for the sale of list packages and goods in the countries in which it operates. SwipeBids reserves the right to change these Terms & Conditions at any time without notice to You. Consequently, You should review these Terms & Conditions for changes each time You visit SwipeBids. If you have any questions, concerns, or comments about our Terms & Conditions, please email us at support@SwipeBids.com.

Acceptance of Terms and Conditions

By accepting the Terms & Conditions and/or registering with SwipeBids, You confirm that You are eligible (as specified in the "Eligibility" section) to use SwipeBids. If You do not agree to the Terms & Conditions, do not use SwipeBids. If You access, use, or download in any way, any service from SwipeBids, You agree to and are bound by these Terms & Conditions.

Returns and Cancellations

SwipeBids allows winners the right to cancel or return an order. This right is unconditional and begins from the moment the contract is concluded. If a You cancel a contract to which the cancellation provisions apply, You are entitled to a refund of the auction end price (including shipping costs). You have paid even if the goods are not defective in any way. Bids placed on the auction are not eligible for a refund. These cancellation rights end 21 days after the day the winner received the goods or a notification that the goods are ready for collection. Some exceptions may apply. If such exception does apply, it will be noted on the auctions return information on the individual auction page. Exclusions included Free Bids, Coupons, and Voucher Bids. If You are found to be in bad standing due to fraudulent behavior, excessive refund requests and other such behavior, You are deemed to be a breach of the Terms & Conditions and will not be eligible for a refund. If You wish to cancel the contract, You must inform SwipeBids by email that You want to cancel within the time period noted above. Cancellations by phone will not be accepted. The following contract detail must be used: support@SwipeBids.com in order to complete a cancellation or return. You must return the received product or products in new condition. Shipping expenses for returns will be paid by You. Unless goods are found to be defective), SwipeBids will not accept a return if You are unable to return the service or product received or are only able to return it in part or in a depreciated condition. Should SwipeBids incur additional costs for insufficient packaging on the return, these costs will be deducted from any previous payment remitted by You. Should SwipeBids not be able to deliver the product ordered or the product won, SwipeBids shall be entitled to substitute the item with an equivalent product acceptable to both SwipeBids and You, or provide a refund of the auction end price, Buy It Now payments, and all bids placed by You on that particular auction.

THIS PAGE RECEIVES COMPENSATION FOR CLICKS ON OR PURCHASE OF PRODUCTS FEATURED ON THIS SITE.

4

13.     Defendant Swipebids and John Doe Defendant work together to "optimize" landing pages so as to drive ever-higher rates of registration/purchase.  Swipebids and the John Doe Defendant are motivated to take this active role because the revenue generated from a consumer's

---

3      The testimonials, above, are also fake.  See the fake blog website at http://www.consumertipsdigest.org/penny_auctions/vt/index.php .  This site contains the same testimonials in support of another, entirely different penny auction site (quibids.com).

4 http://www.ctipsdigest.com/index10.html?t202id=889851&t202kw=NewsWeekGeneral

registration is the only way that all Defendants are initially compensated.  Therefore, all Defendants have a vested interest in not only directing consumers to the registration page, but in also ensuring and actively inducing consumers to submit their billing information.

14.     This optimization can include changing the design of ad pages in the order path including the color, words used, placement of words, font size, placement of the Terms of Service, and the use of such "pressures" as phrases like

> "Due to high demand, we are only accepting a limited number of new customers today.  To ensure your spot, please sign up in the next three minutes."

Such pressures are simply fabrications and are inserted into the website at specified screen locations to further drive sales.

15.     The initial representations and the publisher pages driving consumers to the Swipebids transaction pages omit the seminal disclosure that Swipebids charges consumers a membership fee of $150 to $159 before they may begin bidding on products (or bid packages themselves).

16.     The initial representation also fails to state that the price displayed for the item described also includes the cost of the bids a consumer tenders in the auction process.  This cost to consumers, at .50 cents or more per bid, may be considerably more than the published auction selling price.

17.     The pages below (two total pages) are representative Swipebids transaction pages to which the above publisher page links consumers.

COMPLAINT



---

[5] On this page, a consumer's personally identifiable information (PII) is entered.  Swipebids monetizes this PII by selling it to other marketers.







18.     Specifically, consumers are deceptively induced to enter their credit/debit card payment information in order to pay for their "Winning Auctions."  Reasonable consumers understand this to mean that they must tender billing information so as to pay for items they bid on, and win.

19.     In actuality, consumers are paying upfront, before bidding, for a Swipebids "membership."

20.     Membership is not optional.  Each consumer must become a "member" to participate.  A reasonable consumer does not expect pay an advance membership fee, as this is neither usual among online auction sites or clearly and conspicuously disclosed anywhere in the online order path culminating at the Swipebids transaction page.

21.     The "membership" a consumer purchases appears to have no actual value as against any other penny auction site.

22.     Consumers willingly enter payment information so as to allow Swipebids to bill them when they successfully bid for an item displayed.  Reasonable consumers do not suppose that, absent a clear disclosure to the contrary, they will be charged an upfront fee to participate in an online auction.

23.     Consumers who complain about Swipebids often do so by way of an online chat with a Swipebids representative.  In every instance, that representative sends the consumer a link to a transaction page that Swipebids states is the page on which the consumer entered their payment information.  That discussion, with the link, typically appears as follows:

Please CLICK HERE for details that were stated on your checkout page as you confirmed your original purchase. This checkout page and its disclosures have been approved by our Attorneys, and comply with strict credit card regulations issued by your bank to ensure the charges cannot be disputed.

COMPLAINT

14

24.     In fact, the online page to which Swipebids's customer representatives refer complainants is materially different than the initial page they visited—this page actually discloses the upfront fees to be charged.









25.     In the page sent by the Swipebids representative (above), clear disclosures in the box containing payment submit fields state that:

"**INCREDIBLE SAVINGS Could Be Yours!**

**SwipeBids Access Just ~~$250~~ $159 Today!**"

26.     At the bottom of this same page, a price disclosure immediately adjacent the green "Start Bidding" button appears as follows:

"**By clicking below you will be charged $159 and receive 300 bids.**"

27.     During the relevant time period, the price disclosures above did not appear on pages viewed by consumers that submitted billing information to Swipebids. (see ¶ 17, herein).

Swipebids knows or should know that it is fraudulently directing complaining consumers to a page that is not the page viewed by consumers at the moment they registered with Swipebids.

28.     Typically, when consumers dispute this representation, Swipebids ignores them and does not issue refunds as requested.

29.     At its most basic, Swipebids is a hybrid of an ordinary auction and thinly-veiled pari-mutual wagering.  Participants bid on bids – the actual currency needed to participate in the auction – and then bet bids that they have already paid for and cannot recover, against each other in a single event for a single outcome– winning the auction for a particular item (even if the item is more bids).  Bids are collected until the bidding stops.

30.     Unlike other auction sites that are genuine shopping sites, no useful "Buy It Now" option is available for Swipebids customers.  This means that a Swipebids customer may actually pay more for the item than the item might otherwise sell for at a retail establishment.  Consumers do this, of course, for the same reason gamblers stay in a poker game – they already have money in the pot.  Other auction sites not only offer a "Buy It Now" option, but allow consumers to apply the price of all used bids to the purchase price of the item on which they were bidding.  Swipebids does not do this.

31.     Despite presenting itself as an online auction forum, the many consumers duped by Swipebids that seek refunds are referred to a form that must be printed, completed by hand, and mailed back to Swipebids.  Swipebids refuses to refund any consumers that 1) possess any bids crammed on them through the initial deceptive membership registration, or 2) thereafter, to dispose of those bids, bid on and win any item.  Thus, consumers are forced to bid and often win unimportant items, like a $1.00 SwipeBids bid card that effectively disqualifies them from receiving a $150/$159 refund.

32.     Defendant knows or should know that these ads and offers violate clearly established laws requiring, among other seminal concerns, that all material purchase terms be clearly and conspicuously disclosed to consumers.

33.     Although Defendant uses a number of specific paths and representations for its deception, each order path has a core, common deceptive underpinning; namely, that a consumer will not be charged for registering to participate in the Swipebids auction.

### Facts Relating to Plaintiff Oluwaseun Fasugbe

34.     During the relevant period, Plaintiff Olu Fasugbe clicked on an advertisement on a search page while looking for a good deal on a flat-screen TV. The link led to a fake news article describing the terrific benefits to be gained by bidding on electronic items at a Swipebids auction site and containing a TV station newscast about Defendant and personal testimonials attesting to the value of this online auction.  This site contained a link to a Swipebids page. The link instantaneously routed Fasugbe to a specific Swipebids landing page, similar or identical to the pages described above.  At the Swipebids page, Plaintiff viewed a red flashing call to action that stated he had 3 minutes to register with Swipebids.

35.     Plaintiff reasonably understood that he could bid on Swipebids items, including a flat-screen TV, simply by submitting payment information allowing Swipebids to bill him for any bid or product purchases.

36.     Plaintiff submitted his credit card number for that purpose.

37.     Plaintiff never authorized Swipebids to bill him for a "membership."  Nevertheless, Swipebids immediately charged $150 to Fasugbe's bank card.

38.     As soon as he discovered the unauthorized charge to his account, Fasugbe contacted Swipebids to request a refund.

COMPLAINT

39.     Plaintiff Fasugbe told a Swipebids representative that he did not agree to pay a membership charge in order to participate in a Swipebids auction, but Swipebids refused to provide any refund.

40.     Plaintiff has *not* been given a refund from Swipebids.

### Facts Relating to Plaintiff Luke Huckaba

41.     During the relevant time period, Plaintiff Luke Huckaba responded to an online advertisement offering a code that, upon registering with Swipebids, promised to provide him with a free $25 Wal-Mart gift card and 1000 free bids.

42.     Plaintiff did not know that by registering to participate in the Swipebids online auction, Swipebids would immediately charge him $150.

43.     Plaintiff did bid on several items using the 1000 "free" bids he received from Swipebids, but did not win any items.  Plaintiff never received the free gift card.

44.     Upon viewing his bank card statement, Plaintiff Huckaba realized that Swipebids had charged him $150.

45.     Plaintiff contacted Swipebids via its website to request a refund.  During an online chat session, a Swipebids representative informed Plaintiff Huckaba that a) the "membership" price was clearly disclosed on the registration page, b) he could not get a refund until he used all his bids, and c) if he won any items on which he bid, he could not receive a refund of the membership fee.

46.     Plaintiff Luke Huckaba never authorized Swipebids to charge his bank account a membership fee of $150.

47.     Plaintiff has *not* been given a refund from Swipebids.

### Class Allegations

48.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and

COMPLAINT

Rule 23(b)(3) on behalf of themselves and a Class and a SubClass defined as follows:

**Swipebids Class:**

All residents of the United States who were charged a membership fee by Defendant Swipebids.

**John Doe SubClass:**

All residents of the United States who were directed to a Swipebids.com landing page by the John Doe Defendant advertising network and were charged a membership fee by Swipebids.com.

The following people are excluded from the Class and SubClass: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants' or their parents have a controlling interest and their current or former employees, officers and directors; 3) persons who properly execute and file a timely request for exclusion from the class; and 4) the legal representatives, successors or assigns of any such excluded persons.

49.     Hereinafter, the above-described Class and SubClass may be referred to collectively as the "Classes."

50.     **Numerosity:**  The exact number of the members of the Classes is unknown and not available to Plaintiffs, but it is clear that individual joinder is impracticable.  On information and belief, Defendants have deceived thousands of consumers who fall into the definitions set forth above.  Members of the Class and SubClass can be identified through Defendants' records.

51.     **Typicality:**  Plaintiffs' claims are typical of the claims of other members of the Classes, as Plaintiffs and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly with Plaintiffs and the public.

52.     **Adequate Representation:**  Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex litigation and class actions.  Plaintiffs have no interest antagonistic to those of the Class and SubClass, and Defendants have no defenses unique to Plaintiffs.

53.     **Predominance and Superiority:**  Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable.  The damages suffered by the individual members of the Class and SubClass will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.  It would be virtually impossible for the members of the Class and SubClass to obtain effective relief from Defendants' misconduct on an individual basis.  Even if members of the Class and SubClass themselves could sustain such individual litigation, it would not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.  Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

54.     **Commonality:**  There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.  Common questions for the Classes include, but are not limited to the following:

(a)     Whether Defendants' conduct alleged herein constitutes violations of Cal. Bus. & Prof. Code §§ 17500 *et seq.*;

(b)     Whether Defendants' conduct alleged herein constitutes violations of Cal. Bus. &
Prof. Code §§ 17200 *et seq.*;

(c)     Whether Defendants' conduct alleged herein constitutes violations of Cal. Civ. Code
§§ 1750 *et seq.*;

(d)     Whether Defendants' conduct alleged herein constitutes fraud in the inducement;

(e)     Whether Defendants' conduct alleged herein constitutes conspiracy to commit fraud
in the inducement;

(f)     Whether Defendant Swipebids's conduct alleged herein constitutes breach of
contract; and

(g)     Whether Defendants' conduct alleged herein constitutes unjust enrichment.

**COUNT I**
**Violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On Behalf of Plaintiffs and the Classes)**

55.     Plaintiffs incorporate by reference the foregoing allegations.

56.     It is unlawful for a corporation to knowingly make, by means of any advertising
device or otherwise, any untrue or misleading statement with the intent to sell a product or service,
or to induce the public to purchase a product or service. Any statement in advertising that is likely
to deceive members of the public constitutes false and misleading advertising under Cal. Bus. &
Prof. Code §§ 17500, *et seq*.

57.     As alleged herein, both Defendants have disseminated, and continue to disseminate
advertising that they know or should reasonably know is false and misleading.  This conduct
includes, but it is not limited to, promoting and advertising online auctions for products without
disclosing the actual price to participate, a material term of this transaction.  Defendants actively
misrepresent and conceal the actual price(s) consumers are charged when they submit their credit
card information.

58.     By committing the acts alleged in this Complaint, Defendants have knowingly

disseminated untrue and/or misleading statements through online advertising in order to sell "memberships" to their online auctions, in violation of the proscriptions of Cal. Bus. & Prof. Code § 17500.

59.     Plaintiffs and members of the Classes were all charged monies beyond what they authorized. Accordingly, Plaintiffs and members of the Classes have suffered injury in fact and lost money as a result of Defendants' acts of false advertising.

60.     Plaintiffs seek an order requiring Defendants to (1) immediately stop the unlawful practices stated in this Complaint; (2) make full restitution of all funds wrongfully obtained; and (3) pay interest, attorney's fees, and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT II**
**Violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*.**
**(On Behalf of Plaintiffs and the Classes)**

61.     Plaintiffs incorporate by reference the foregoing allegations.

62.     The Consumers Legal Remedies Act prohibits the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression or omission of any material fact with intent that others rely upon such act in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.

63.     As alleged herein, both Defendants have engaged in deceptive practices, unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750, *et seq*., to the detriment of Plaintiffs and the Classes.

64.     Defendants utilize false and deceptive advertising that both conceals the actual price of the product and widely and willfully misrepresents testimonial support for the product offered.

65.     Defendants' offers contain unconscionable terms in that they are unfair and inequitable and the material terms of the offers are hidden and actively misrepresented by Defendants.

66.     Defendants, acting with knowledge, intentionally and unlawfully brought harm upon

COMPLAINT

25

Plaintiffs and the Classes by deceptively inducing Plaintiffs and the members of the Class and SubClass to purchase a product by using deceptive and misleading advertisements that fail to clearly and conspicuously disclose the price of the goods and services and by thereafter placing unauthorized charges on their credit and bank card accounts. Specifically, Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

      (a)     In violation of § 1770(a)(2) by using false testimonials to misrepresent the source, sponsorship, approval, or certification of Defendants' goods or services;

      (b)     In violation of § 1770(a)(3) by misrepresenting the affiliation, connection, or association with, or certification by, a third party news organizations and others in relation to Defendants' products;

      (c)     In violation of § 1770(a)(9) by advertising Defendants' goods or services with the intent not to sell them as advertised;

      (d)     In violation of § 1770(a)(13) by making false or misleading statements of fact concerning the availability of bonus bids and gifts related to Defendants' good or services;

      67.     Plaintiffs and the Classes have suffered harm as a proximate result of Defendants' violations of law and wrongful conduct.

      68.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiffs and the Classes seek injunctive relief requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and any other appropriate remedy for violations of the CLRA.  For the sake of clarity, Plaintiffs explicitly disclaim any claim for damages under the CLRA at this time.

**COUNT III**
**Violation of the Unfair Competition Law, Cal. Bus. & Prof. §§ 17200, *et seq.***
**(On Behalf of Plaintiffs and the Classes)**

      69.     Plaintiffs incorporate by reference the foregoing allegations.

      70.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

COMPLAINT

71.     The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law. A fraudulent business practice is one in which members of the public are likely to be deceived.

72.     As alleged herein, Defendants' continued utilization of unlawful and unconscionable marketing practices, and the continuing practice of charging consumers credit and bank cards without authorization, constitutes an unlawful and unfair business practice in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

73.     In deceiving Plaintiffs and the Classes by creating and supporting advertising that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiffs and members of the Class and SubClass to proffer payment information based on that misrepresentation, Defendants have engaged in deceptive trade practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

74.     The price of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception related to the price of a consumer product is materially misleading.

75.     Defendants' misrepresentation of the price of its products is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

76.     Defendants have violated the "unfair" prong of the UCL in that their actions caused substantial injury to consumers by charging their credit cards without their consent after inducing them to submit their information through deceptive marketing. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

77.     Defendants have violated the "fraudulent" prong of the UCL in that their statements, advertisements, and representations regarding what consumers would be charged for their products

are false and likely to deceive a reasonable consumer. Further Defendants' acts constitute fraud in the inducement and conspiracy to commit fraud in the inducement as detailed in Counts IV and V.

78.     Defendants have violated the "unlawful" prong of the UCL in that Defendants' conduct violated the Consumer Legal Remedies Act (Cal. Bus. & Prof. Code §§ 1750, *et seq.*) and the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*).

79.     Plaintiffs and the Classes have suffered harm as a proximate result of Defendants' violations of law and wrongful conduct.

80.     Pursuant to Cal. Bus. & Prof. Code §§ 17203, Plaintiffs seek an order of this Court permanently enjoining Defendants from continuing to engage in unfair and unlawful conduct.

81.     Plaintiffs seeks an order requiring Defendants to (1) immediately stop the unlawful practices alleged in this Complaint; (2) make full restitution of all funds wrongfully obtained; and (3) pay interest, attorneys' fees, and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT IV**
**Fraud in the Inducement**
**(On Behalf of Plaintiffs and the Classes)**

82.     Plaintiffs incorporate by reference the foregoing allegations.

83.     As described with particularity herein, Defendants have disseminated, and continue to disseminate advertising that they know or should reasonably know is false and misleading. This conduct includes, but it is not limited to, promoting and advertising their products without disclosing the actual price, a material term of any transaction. Defendants actively misrepresent and conceal the actual price(s) consumers are charged when they submit their credit and debit card information.

84.     Through a series of advertisements, representations, omissions, and false statements regarding the Swipebids auction, Defendants acted in concert to conceal the actual price a consumer is charged to participate.

85.     Defendant Swipebids, in conjunction with John Doe Defendant and other ad networks, took concrete and intentional steps to conceal the actual price ultimately placed on the

COMPLAINT

1   credit and debit cards of Class members.

2       86.     Defendants took concrete and intentional steps to conceal the actual price ultimately

3   placed on the credit and bank cards of Class members. Defendants intentionally made all

4   representations of the actual price difficult to locate and/or read, by omitting the actual price

5   charged consumers from its marketing materials.

6       87.     Defendant Swipebids and John Doe Defendant actively take part in optimizing the

7   online bidding transaction pages so as to increase the rate of conversions (sales) and have full

8   knowledge and visibility of the website content and each transaction, including knowledge of the

9   concealed prices.

10      88.     In furtherance of Defendants' fraudulent conduct, Defendant Swipebids sends

11  consumers who demand a refund a link to a registration page that is not the actual registration page

12  on which they submitted their payment information.

13      89.     The intentional provision to consumers by Swipebids of a page it created that

14  materially differs from the page consumers actually viewed and acted upon is a fraudulent act or

15  practice designed to deceive and defraud consumers that correctly state that Swipebids did not

16  clearly and conspicuously disclose the membership charge it crammed on consumers when they

17  registered for the auction site.

18      90.     By committing the acts alleged in this Complaint, Defendants have knowingly

19  disseminated untrue and/or misleading statements through fraudulent advertising in order to sell or

20  induce members of the public to purchase "memberships" to Swipebids's online auction site.

21      91.     The price of a consumer product is a material term of any transaction because it

22  directly affects a consumer's choice of, or conduct regarding, whether to purchase a product.  Any

23  deception or fraud related to the price of a consumer product is materially misleading.

24      92.     The misrepresentation or omission of the price of a product is likely to mislead a

25  reasonable consumer who is acting reasonably under the circumstances.

26      93.     Defendants knew or should have known of the falsity of the representations made

27

28

COMPLAINT

1   regarding the online auctions they marketed.

2       94.    Defendants intended that the deceptive and fraudulent misrepresentations and

3   omissions would induce a consumer to rely and act based on those false representations and

4   omissions.

5       95.    Plaintiffs and members of the Class and Subclass were all charged monies beyond

6   what they authorized. Accordingly, Plaintiffs and members of the Class and Subclass have suffered

7   injury in fact and lost money in justifiable reliance on Defendants' misrepresentations and

8   omissions of material fact.

9       96.    In deceiving Plaintiffs and the Class by creating and supporting advertising that fails

10   to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiffs and the

11   Classes to proffer payment information based on that misrepresentation, Defendants have engaged

12   in fraudulent practices designed to mislead and deceive consumers.

13       97.    Plaintiffs and the Classes have suffered harm as a proximate result of Defendants'

14   violations of law and wrongful conduct.

15       98.    In deceiving Plaintiffs and the Subclass by creating and supporting advertising that

16   fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiffs

17   and the Subclass to proffer payment information based on that misrepresentation, Defendants have

18   engaged in fraudulent practices designed to mislead and deceive consumers.

19       99.    Plaintiffs and the Subclass have suffered harm as a proximate result of the violations

20   of law and wrongful conduct of Defendants.

21       100.    Plaintiffs, on behalf of themselves and the Classes, seek damages for Defendants'

22   unlawful conduct.

23   **COUNT V**
**Conspiracy to Commit Fraud in the Inducement**
24   **(On Behalf of Plaintiffs and the Classes)**

25       101.    Plaintiffs incorporate by reference the foregoing allegations.

26       102.    Defendants acted in concert as business partners and through a common enterprise to

27

28

COMPLAINT

drive sales of online auction products, and cram consumers credit and debit card bills with unauthorized charges through fraudulent and deceptive marketing, as stated in Count IV of this Complaint.

103.   As a fundamental part of their business relationship, Defendants acted to deceive consumers regarding the actual price of the online auction products, thereby inducing consumers to submit their credit and debit card information, on which the Defendant Swipebids crammed unauthorized charges.

104.   Defendants took overt acts in furtherance of their conspiracy across the nation, and specifically took overt acts in furtherance within this District. As alleged with particularity herein, Defendants formed contracts with each other, created deceptive marketing, advertisements, websites, and other solicitation materials to drive consumers to the online auction transaction page with knowledge that the marketing contained therein was false and misleading, and with the intent that the marketing taken as a whole would be relied on by consumers. Defendants, working together, and working with non-defendant affiliate marketers and publishers, formed a mutually beneficial network of deceptive and misleading marketing designed to induce consumers to submit a credit or bank card number for the purchase of an online auction "membership."

105.   Any single Defendant, acting alone, would be unable to accomplish the level of deception and misrepresentations accomplished by Defendants acting together. The combination of their joint deception reinforces the appearance of legitimacy presented to consumers, thereby increasing the likelihood of a consumer submitting their credit or bank card number.

106.   Plaintiffs and the Classes have suffered harm in the form of monetary damages as a proximate result of the conspiracy and violations of law carried out by Defendants.

107.   Plaintiffs, on behalf of themselves and the Classes, seek damages for Defendants' unlawful conduct.

**COUNT VI**
**Restitution/Unjust Enrichment**
**(On Behalf of Plaintiffs and the Classes)**

108.    Plaintiffs incorporate by reference the foregoing allegations.

109.    Plaintiffs and members of the Class conferred a monetary benefit on Defendants. Defendants have received and retained money belonging to Plaintiffs and the Class as a result of the substantial and unauthorized charges Defendant Swipebids placed on their credit and debit card bills. Defendants profited from each individual "membership" purchase made by a consumer after being directed to the Swipebids transaction pages.

110.    Defendants appreciate or have knowledge of such benefit.

111.    Under principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiffs and members of the Class, which Defendants have unjustly received as a result of its unlawful actions.

112.    Plaintiffs and other members of the Class suffered damages as a direct result of Defendants' conduct.

113.    Plaintiffs, on behalf of themselves and the Class, seek restitution for Defendants' unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Oluwaseun Fasugbe and Luke Huckaba , on behalf of themselves and the Classes, pray for the following relief:

A.    Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiffs as class representatives, and appoint their counsel as class counsel;

B.    Declare that Defendants' actions, as set out above, violate Cal. Bus. & Prof. Code §§ 17500 *et seq.*, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Cal. Civ. Code §§ 1750 *et seq.*, and constitute fraud in the inducement, conspiracy to commit fraud in the inducement, and unjust enrichment;

C.    Award Plaintiffs and the Classes statutory damages;

COMPLAINT

D.     Award all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct, and if their conduct is proven to be willful, award Plaintiffs and the Classes exemplary damages;

E.     Award restitution against Defendants for all money to which Plaintiffs and the Classes are entitled in equity;

F.     Award Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

G.     Award Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable;

H.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and the Classes; and

I.     Award such other and further relief as equity and justice may require.

### JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

Dated:  August 27, 2010

EDELSON MCGUIRE, LLP

By:  /s/ Sean Reis
    SEAN REIS
    One of the Attorneys for Plaintiffs

SEAN REIS - SBN 184004
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

WILLIAM HASELDEN (*pro hac vice to be filed*)
whaselden@edelson.com
BENJAMIN H. RICHMAN (*pro hac vice to be filed*)
brichman@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

COMPLAINT