UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| OLUWASEUN FASUGBE and LUKE HUCKABA, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>JESSE WILLMS, an individual, 1524948 ALBERTA LTD., a Canadian corporation d/b/a TERRA MARKETING GROUP d/b/a SWIPEBIDS.COM, SPHERE MEDIA, LCC, a Nevada limited liability company, and JOHN DOES 1-50 inclusive,<br><br>        Defendants.<br>_____/ | NO. CIV. 2:10-2320 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE:</u><br><u>MOTIONS TO DISMISS AND TO</u><br><u>STRIKE</u> |

----oo0oo----

        Plaintiffs Oluwaseun Fasugbe and Luke Huckaba brought this action against defendants Jesse Willms, 1524948 Alberta Ltd. d/b/a Terra Marketing Group d/b/a Swipebids.com ("Terra Marketing"), and Sphere Media, LLC ("Sphere Media"), alleging violations of California's False Advertising Law ("FAL"), Cal.

1

Bus. & Prof. Code §§ 17500-17606, Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1785, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as well as fraud in the inducement, conspiracy to commit fraud in the inducement, and "restitution/unjust enrichment." Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1332. Terra Marketing and Sphere Media now move to dismiss plaintiffs' First Amended Complaint ("FAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike plaintiffs' class allegations pursuant to Rule 12(f). Willms moves to dismiss and to strike on the same grounds and also moves to dismiss pursuant to Rule 12(b)(2) on the ground that the court lacks personal jurisdiction over him.

I.   Factual and Procedural Background

Terra Marketing is a seller of online auction currency, or "bids," which consumers use to bid on products in online auctions. (FAC ¶¶ 4, 16.) Willms, a citizen of Canada, is allegedly a "principal" of Terra Marketing and Sphere Media. (Id. ¶ 3.) Sphere Media is allegedly a subsidiary of Terra Marketing and is based in Nevada. (Id. ¶ 5.)

Plaintiffs allege that defendants run an online auction website, SwipeBids.com, which is advertised via sponsored links, banner advertisements, and links in fake news articles and fake blogs. (Id. ¶¶ 16-24.) The links direct consumers to a webpage[1] titled "SwipeBids Registration," which explains the steps consumers must take to "win" "government auctions," "warehouse

---

[1] Plaintiffs provided screenshots of the relevant webpages in their FAC. (FAC ¶ 25.)

2

clearance auctions," and "overstocked surplus auctions." (Id. ¶ 25.) A graphic in the middle of the page states: "Winning is Easy: Step 1: JOIN & RECEIVE BIDS Step 2: PLACE BIDS on AUCTIONS Step 3: WIN GREAT PRODUCTS!" (Id.) Below, the page states: "WIN Great Prizes at Incredible Prices!," with an arrow pointing to the right side of the page stating "Register Now! It's Easy!" (Id.) On the right, consumers are prompted to enter their name, gender, e-mail address, create a username and password, and then click "Continue." (Id.)

Consumers are then brought to another page that states "STEP 2 OF 2: Congratulations, final step! Scroll down to finish registering." (Id.) A number of images from the first page are repeated, with a few additional images. One image states "SwipeBids Member Wins New 2010 Honda Civic" and describes someone who "Spends $150 to get $16,356 Civic" and in smaller print states as a testimonial "I spent $150 on a membership, and now I'm driving a $16,356 Honda Civic that I won on SwipeBids. The membership has really paid off in so many ways . . . ." (Id.) Below, another graphic states "Check Out Some of These INCREDIBLE SAVINGS Our Members Recently Got" with a list of products that were recently purchased, and then states "Savings Could Be Yours! Membership $250 $150." (Id.) The webpage does not include any fields in which credit card information could be entered. The FAC only alleges that "consumers are deceptively induced to enter their credit and bank account information in order to pay for their 'Winning Auctions,'" when in fact they are charged an initial "membership" fee. (Id. ¶¶ 26-27.)

Consumers who complain about SwipeBids allegedly often

3

do so by way of an online chat with a SwipeBids representative. (Id. ¶ 31.) That representative allegedly sends the consumer a link to a transaction page SwipeBids contends is the page on which the consumer initially entered their payment information. (Id.) Plaintiffs allege that defendants are fraudulently directing complaining consumers to a page that is not the page viewed by consumers when they initially registered with SwipeBids. (Id. ¶ 35.) That allegedly fraudulent page is essentially the same as the one plaintiffs alleged they initially visited but with certain different graphics and with one addition near the bottom of the second page: a section with two columns in which consumers are directed to submit their credit card information. The left column is titled "SwipeBids Access Details" and describes "SwipeBids Access (Includes 300 Bids)" as costing "53¢/bid ($159 Total)," and states below that "ONLY $159 GRANTS YOU ACCESS TO" government auctions and other deals.[2] (Id. ¶ 32.) On the right, a field asks "Where Do We Send Your Winning Auctions?," below which it states "INCREDIBLE SAVINGS Could Be Yours! SwipeBids Access Just $250 $159 Today!" (Id.) It then asks for "Shipping Information," including name and address, and "Payment Information," including credit card type and number. (Id.) Directly above a button that states "Start Bidding," the page states "By clicking below you will be charged $159 and receive 300 bids." (Id.)

    Plaintiff Fasugbe allegedly clicked on an advertisement

---

[2] Plaintiffs do not allege that the discrepancy between the $150 charge and the $159 charge is relevant. It appears that SwipeBids simply raised the cost of membership.

4

displayed in an Internet search page while looking for a discount on a flat-screen television, which directed him to an allegedly fake news article describing the benefits to be gained by bidding on items through SwipeBids. (Id. ¶ 40.) This site contained a link routing Fasugbe to SwipeBids. (Id. ¶ 42.) Fasugbe submitted his credit card information to SwipeBids, allegedly believing that this would allow him to bid on SwipeBids items. (Id. ¶¶ 43-44.) SwipeBids immediately charged him $150; he has not yet received a refund. (Id. ¶¶ 45-48.)

Plaintiff Huckaba allegedly responded to an online advertisement offering a code that, upon registering with SwipeBids, promised to provide him with a free $25 Wal-Mart gift card and 1000 free bids. (Id. ¶ 49.) SwipeBids charged him $150 when he registered. (Id. ¶ 51.) He bid on several items using the 1000 "free" bids, but never won an auction and never received the free gift card. (Id. ¶ 52.) He has not yet received a refund. (Id. ¶ 54.)

Plaintiffs bring this suit as a putative class action with two classes: "Swipebids Class: All residents of the United States who were charged a membership fee by Defendant Swipebids," and "John Doe Defendant Subclass: All residents of the United States who were directed to a Swipebids.com landing page by the John Doe Defendant advertising network and were charged a membership fee by Swipebids.com." (Id. ¶ 55.)

II. Discussion

    A.   Personal Jurisdiction over Willms

A plaintiff has the burden of establishing that the court has personal jurisdiction over a defendant. Doe v. Unocal

5

Corp., 248 F.3d 915, 922 (9th Cir. 2001).  On a motion to dismiss, a plaintiff "need make only a prima facie showing of jurisdictional facts . . . .  That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant."  Id. (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).  When not directly controverted, a plaintiff's version of the facts must be taken as true, and conflicts between the facts contained in the parties' affidavits should be resolved in favor of the plaintiff.  Id.  Once a defendant has contradicted the allegations contained in the complaint, however, a plaintiff may not rest on the pleadings, but must present evidence which, if true, would support the exercise of personal jurisdiction.  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284-85 (9th Cir. 1977).

Only Willms moves to dismiss for lack of personal jurisdiction; the corporate defendants do not dispute whether they are properly subject to jurisdiction in this court.  Plaintiffs argue that the court has personal jurisdiction over Willms because the corporate defendants are alter egos of Willms.

The fiduciary shield doctrine provides that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."  Davis v. Metro Prods., Inc., 885 F.2d 515, 520 (9th Cir. 1989).  In other words, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well."  Colt Studio, Inc. v. Badpuppy Enter., 75 F. Supp. 2d 1104, 1111 (C.D. Cal.

6

1999).  Though employees are not necessarily subject to liability in a given jurisdiction due to the contacts of their employers, "their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually."  Calder v. Jones, 465 U.S. 783, 790 (1984).

The corporate form shielding an individual associated with the corporation from personal jurisdiction may be ignored in two circumstances: (1) where the corporation is the agent or alter ego of the individual defendant; or (2) by virtue of the individual's control of and direct participation in the alleged activities.  Wolf Designs, Inc. v. DHR Co., 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004).  Here, other than alleging that Willms was "one of the primary architects of the fraudulent scheme," (FAC ¶ 3), plaintiffs have not alleged that Willms controlled or directly participated in the alleged activities, and they do not argue in opposition to Willms' motion that he is subject to personal jurisdiction by virtue of his direct participation in the alleged activities.  Therefore, the court will only consider whether it has personal jurisdiction over Willms pursuant to the alter ego theory.

In diversity actions, federal courts look to state law to determine whether the alter ego doctrine applies.  Whitney v. Arntz, 320 Fed. App'x 799, 800 (9th Cir. 2009).  The alter ego doctrine may be invoked where (1) "there is such a unity of interest and ownership that the individuality, or separateness, of the [defendant] and corporation has ceased" and (2) "the facts are such that an adherence to the fiction of the separate

7

existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice."[3] <u>Wood v. Elling Corp.</u>, 20 Cal. 3d 353, 365 n.9 (1977) (emphasis omitted).

      In order to determine whether the requisite unity of interest and ownership exists, courts look to a variety of factors, including the level of control exerted by the supposed alter ego, the level of ownership, commingling of funds, failure to observe corporate formalities, and undercapitalization. <u>See</u> <u>Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec</u>, 854 F.2d 1538, 1543-44 (9th Cir. 1988) (applying California law); <u>RRX Indus., Inc. v. Lab-Con, Inc.</u>, 772 F.2d 543, 545 (9th Cir. 1985) (applying California law and holding individual liable under an alter ego theory where he acted as the president and sole officer, director, and stockholder of the corporation at issue); <u>Associated Vendors, Inc. v. Oakland Meat Co.</u>, 210 Cal. App. 2d 825, 837-38 (1st Dist. 1963).

      Plaintiffs do not set forth sufficient facts regarding the requisite unity of interest and ownership between Willms and Terra Marketing that, if true, would support a finding of personal jurisdiction over Willms. <u>See</u> <u>Doe</u>, 248 F.3d at 922.

---

[3] The alter ego doctrine can be used to "'pierce the corporate veil' jurisdictionally" to determine whether a corporation's contacts are attributable to an individual or another corporation, <u>ADO Fin., AG v. McDonnell Douglas Corp.</u>, 931 F. Supp. 711, 715 (C.D. Cal. 1996), or to establish that an individual or another corporation is <u>liable</u> for the acts of its alter ego corporation, <u>RRX Indus., Inc. v. Lab-Con, Inc.</u>, 772 F.2d 543, 545-46 (9th Cir. 1985).

Willms is allegedly the "principal" of Terra Marketing.[4] However, Terra Marketing had 18-20 employees during the relevant period (Willms Decl. in Supp. of Mot. to Dismiss & to Strike ¶ 5), and there is no evidence that Willms commingled Terra Marketing's funds with his own, treated the assets of the corporation as his own, or ignored corporate formalities in any other way.  See Minton v. Cavaney, 56 Cal. 2d 576, 579-80 (1961). Plaintiffs have provided nothing beyond conclusory allegations that Willms "ignored any corporate formalities and fraudulently misused the corporate forms."  (FAC ¶ 3.)  Accordingly, plaintiffs have not demonstrated that the court has personal jurisdiction over Willms and his motion to dismiss for lack of jurisdiction will be granted.

B.   Motions to Dismiss under Rule 12(b)(6)

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This

---

[4] Plaintiffs allege that Willms is also a principal of Sphere Media (FAC ¶ 3), which Willms denies. (Willms Decl. in Supp. of Mot. to Dismiss & to Strike ¶¶ 5, 8.)  Plaintiffs provide no facts beyond this conclusory allegation that could show that Sphere Media is an alter ego of Willms.

9

"plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 556-57).

Defendants argue that plaintiffs' FAC contradicts their Complaint. The court acknowledges that "there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations." PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 860 (9th Cir. 2007); id. at 859 (the court "has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation") (emphasis added). However, the court need not ignore the prior allegations in determining the plausibility of the current pleadings. See Stanislaus Food Prods. Co. v. USS-POSCO Indus., --- F. Supp. 2d ----, ----, 2011 WL 1677957, at *13 (E.D. Cal. 2011) (O'Neill, J.) (noting that plausibility of Second Amended Complaint, which alleged that agreement occurred in 2006, was affected by allegation in First Amended Complaint that agreement occurred in 1986, when First Amended Complaint was dismissed on statute of limitations grounds); Cole v. Sunnyvale, No. C-08-05017, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010) ("The court may . . . consider the prior allegations [in the original complaint] as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief, as

10

1  required under Iqbal, 129 S. Ct. at 1950."). Thus, plaintiffs
2  may alter their allegations in an amended complaint, but the
3  court may properly consider the plausibility of the FAC in light
4  of the prior allegations.
5      The screenshot of the SwipeBids website in the
6  Complaint is identical to the screenshot in the FAC, with one
7  exception: Near the bottom of the webpage, the Complaint contains
8  a section for submitting payment information. (See Compl. ¶ 17;
9  FAC ¶ 25.) That section is similar but not identical to the
10 payment section in the version to which plaintiffs state they
11 were directed after complaining about the fee. The left column
12 is titled "Membership Details" and describes "1-Year Membership
13 (Includes 300 Bids)" as costing "50¢/bid ($150 Total)," and
14 states below that "ONLY $150 GRANTS YOU ACCESS TO" government
15 auctions and other deals. (Compl. ¶ 17.) On the right, a field
16 asks "Where Do We Send Your Winning Auctions?" (Id.) It then
17 asks for "Shipping Information," including name and address, and
18 "Payment Information," including credit card type and number.
19 (Id.) A button at the bottom states "Start Bidding."[5] (Id.)
20      Plaintiffs attempt to explain the discrepancy between
21 the Complaint and the FAC:

>    [The Complaint version of] the screenshot depicts yet
>    another of the fabricated websites to which Swipebids
>    representatives direct customers after they complain that
>    membership fees levied against them were unauthorized.
>    The subject screenshot was a duplicate of the screenshots
>    already found on pages 16-19 of the amended Complaint
>    [regarding the fabricated websites to which customers
>    were sent after complaining], and was included in the

---

[5] Plaintiffs admit that the Complaint version "actually discloses a $150 membership fee." (Pls.' Opp'n at 8:19-20 (Docket No. 38).)

11

```
 1          original complaint in error.
 2   (Pls.' Opp'n at 9:1-4 (Docket No. 38).)
 3             Plaintiffs' explanation is not plausible.  The FAC
 4   version is identical to the Complaint version with the sole
 5   omission of the payment fields.  Even the graphics, which are
 6   allegedly "optimized" to change color, words used, placement of
 7   words, font size, and placement of the Terms of Service, (FAC ¶
 8   22), are identical.  Contrary to plaintiffs' explanation, the
 9   Complaint version is not identical or even particularly similar
10   to the version to which customers were sent after complaining.
11   Furthermore, plaintiffs' allegations simply do not make sense if
12   the screenshot in the FAC is an accurate, complete version, as
13   plaintiffs contend.  Without a field in which plaintiffs could
14   enter their payment information, they could not have been
15   "deceptively induced to enter their credit and bank account
16   information," (id. ¶ 26), because they could not have entered
17   that information anywhere.
18             The court is thus faced with two possibilities: Either
19   the screenshot in the Complaint is accurate and plaintiffs
20   altered it in the FAC, or the screenshot in the FAC is accurate
21   and the webpage plaintiffs visited did not contain a payment
22   field and thus did not charge them $150.  The court will not
23   speculate as to what actually happened, but under either
24   scenario, plaintiffs' allegations that they were charged a $150
25   membership fee without proper disclosures simply fail to state
26   any plausible claim to relief.
27             Plaintiffs' claims for violations of the FAL and UCL,
28   fraud in the inducement, conspiracy to commit fraud in the
```

inducement, "restitution/unjust enrichment," and portions of their claim for violations of the CLRA all depend on the allegations that defendants charged an undisclosed membership fee.  (See FAC ¶¶ 64, 73, 83-85, 90-101, 109-110, 116.)  Because plaintiffs have not plausibly alleged that defendants charged an undisclosed membership fee, they have failed to state a plausible claim to relief.  Accordingly, the court will grant defendants' motion to dismiss these claims.

The CLRA prohibits particular "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770.  Plaintiffs' CLRA claim is distinct from the others because, in addition to allegations regarding nondisclosure of the membership fee, plaintiffs allege that defendants violated the CLRA by "using false testimonials to misrepresent the source, sponsorship, approval, or certification of Defendants' goods or services" and "misrepresenting the affiliation, connection, or association with, or certification by, third party news organizations and others in relation to Defendants' products."  (FAC ¶ 73.)

"Claims under the CLRA require proof of causation, reliance and damages."  Campion v. Old Republic Home Prot. Co., Inc., --- F.R.D. ----, ----, 2011 WL 42759, at *16 (S.D. Cal. 2011); see Cal. Civ. Code § 1780(a) ("Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [California Civil Code] Section 1770 may bring an action against that

13

1  person."); Henderson v. Gruma Corp., No. CV 10-04173, 2011 WL
2  1362188, at *6 (C.D. Cal. Apr. 11, 2011) ("The CLRA requires a
3  demonstration of actual reliance for standing purposes."); Cattie
4  v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 946 (S.D. Cal.
5  2007) ("California requires a plaintiff suing under the CLRA for
6  misrepresentations in connection with a sale to plead and prove
7  she relied on a material misrepresentation."). Plaintiffs' only
8  alleged reliance and injury related to the representations about
9  the cost of membership, not the testimonials and news articles.
10 Plaintiffs have not alleged sufficient facts to state a plausible
11 claim for relief under the CLRA, and thus the court will grant
12 defendants' motion to dismiss that claim.

13         IT IS THEREFORE ORDERED that Jesse Willms's motion to
14 dismiss and to strike plaintiffs' First Amended Complaint be, and
15 the same hereby is, GRANTED on the ground that the court does not
16 have personal jurisdiction over Willms and DENIED as moot in all
17 other respects.

18         IT IS FURTHER ORDERED that Terra Marketing and Sphere
19 Media's motion to dismiss plaintiffs' First Amended Complaint be,
20 and the same hereby is, GRANTED, and their motion to strike the
21 class action allegations is DENIED as moot.

22         Plaintiffs have twenty days from the date of this Order
23 to file an amended complaint, if they can do so consistent with
24 this Order.

25 DATED: May 25, 2011

                                 _____
                                 WILLIAM B. SHUBB
                                 UNITED STATES DISTRICT JUDGE