UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| OLUWASEUN FASUGBE and LUKE HUCKABA, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>    v.<br><br>JESSE WILLMS, an individual, 1524948 ALBERTA LTD., a Canadian corporation d/b/a TERRA MARKETING GROUP d/b/a SWIPEBIDS.COM, SPHERE MEDIA, LCC, a Nevada limited liability company, and JOHN DOES 1-50 inclusive,<br><br>  Defendants.<br>_____/ | NO. CIV. 2:10-2320 WBS KJN<br><br><u>MEMORANDUM AND ORDER RE:<br>MOTION TO DISMISS AND TO<br>STRIKE</u> |

----oo0oo----

Plaintiffs Oluwaseun Fasugbe and Luke Huckaba brought this action against defendants Jesse Willms, 1524948 Alberta Ltd. d/b/a Terra Marketing Group d/b/a Swipebids.com ("Terra Marketing"), and Sphere Media, LLC ("Sphere Media"), alleging violations of California's False Advertising Law ("FAL"), Cal.

1

Bus. & Prof. Code §§ 17500-17606, Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750-1785, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as well as fraud in the inducement, conspiracy to commit fraud in the inducement, and "restitution/unjust enrichment."  On May 25, 2011, the court granted defendants' motions to dismiss the First Amended Complaint ("FAC") for failure to allege personal jurisdiction over Willms and failure to state a claim.  (Docket No. 44.)  Plaintiffs filed their Second Amended Complaint ("SAC") on June 15, 2011.  (Docket No. 45.)  Defendants now move to dismiss plaintiffs' SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and on the ground that the court lacks personal jurisdiction over Willms pursuant to Rule 12(b)(2).  Defendants also move to strike plaintiffs' class allegations pursuant to Rule 12(f).

I.   Factual and Procedural Background

Terra Marketing is a seller of online auction currency, or "bids," which consumers use to bid on products in online auctions.  (SAC ¶¶ 4, 20.)  Willms, a citizen of Canada, is allegedly the Chief Executive Officer of Terra Marketing and Sphere Media.  (Id. ¶ 3.)  Sphere Media is allegedly a subsidiary of Terra Marketing and is based in Nevada.  (Id. ¶ 5.)

Plaintiffs allege that defendants run an online auction website, SwipeBids.com, which is advertised via sponsored links, banner advertisements, and links in fake news articles and fake

1  blogs.  (Id. ¶¶ 20-28.)  The links direct consumers to a webpage[1]
2  titled "SwipeBids Registration," which states near the top of the
3  page: "STEP 1 OF 2: Scroll down to register."  (Id. ¶ 29.)  A
4  graphic in the middle of the page states: "Winning is Easy: Step
5  1: JOIN & RECEIVE BIDS Step 2: PLACE BIDS on AUCTIONS Step 3: WIN
6  GREAT PRODUCTS!"  (Id.)  Below several consumer testimonials, the
7  page states: "WIN Great Prizes at Incredible Prices!," with an
8  arrow pointing to the right side of the page stating "Register
9  Now!  It's Easy!"  (Id.)  On the right, consumers are prompted to
10 enter their name, gender, e-mail address, create a username and
11 password, and then click "Continue."  (Id.)

12        Plaintiffs allege that, after clicking "Continue,"
13 consumers are directed to a "credit card submit" page.  (Id. ¶
14 32.)  Plaintiffs allege that "on the credit card submit page,
15 Swipebids represents that the consumers' account information is
16 only necessary in order to pay for 'winning auctions,'" but that
17 the page "fails to disclose the existence of its membership
18 fees."  (Id. ¶¶ 33-34.)  Once a consumer completes the
19 registration process by submitting their credit card information,
20 SwipeBids allegedly charges them a membership fee of $150 or
21 $159.  (Id. ¶¶ 27, 35.)

22        Consumers who complain about SwipeBids allegedly often
23 do so by way of an online chat with a SwipeBids representative.
24 (Id. ¶ 42.)  That representative allegedly sends the consumer a
25 link to a transaction page SwipeBids contends is the page on
26 which the consumer initially entered their payment information.

---

28    [1]   Plaintiffs provided a screenshot of this webpage in their SAC.  (SAC ¶ 29 (Docket No. 45).)

3

1  (Id.)  Plaintiffs allege that defendants fraudulently direct
2  complaining consumers to a page that is not the page viewed by
3  consumers when they initially register with SwipeBids.  (Id. ¶
4  43.)  The page to which consumers are allegedly sent after
5  complaining discloses the fact that a membership fee will be
6  charged.  (Id.)

7       Plaintiff Fasugbe allegedly clicked on an advertisement
8  displayed in an Internet search page while looking for a discount
9  on a flat-screen television, which directed him to an allegedly
10 fake news article describing the benefits to be gained by bidding
11 on items through SwipeBids.  (Id. ¶ 51.)  This site contained a
12 link routing Fasugbe to SwipeBids.  (Id. ¶ 53.)  Fasugbe
13 submitted his credit card information to SwipeBids, allegedly
14 believing that this would allow him to bid on SwipeBids items.
15 (Id. ¶ 54.)  SwipeBids immediately charged him $150; he has not
16 received a refund.  (Id. ¶¶ 55-58.)

17      Plaintiff Huckaba allegedly responded to an online
18 advertisement offering a code that, upon registering with
19 SwipeBids, promised to provide him with a free $25 Wal-Mart gift
20 card and 1000 free bids.  (Id. ¶ 59.)  SwipeBids charged him $150
21 when he registered.  (Id. ¶ 61.)  He bid on several items using
22 the 1000 "free" bids, but never won an auction and never received
23 the free gift card.  (Id. ¶ 62.)  He has not received a refund.
24 (Id. ¶ 64.)

25      Plaintiffs bring this suit as a putative class action
26 with two classes: "Swipebids Class: All residents of the United
27 States who were charged a membership fee by Defendant Swipebids,"
28 and "John Doe Defendant Subclass: All residents of the United

4

States who were directed to a Swipebids.com landing page by the John Doe Defendant advertising network and were charged a membership fee by Swipebids.com." (Id. ¶ 65.)

II.  Discussion

    A.  Personal Jurisdiction over Willms

A plaintiff has the burden of establishing that the court has personal jurisdiction over a defendant. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). On a motion to dismiss, a plaintiff "need make only a prima facie showing of jurisdictional facts . . . . That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Id. (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). When not directly controverted, a plaintiff's version of the facts must be taken as true, and conflicts between the facts contained in the parties' affidavits should be resolved in favor of the plaintiff. Id. Once a defendant has contradicted the allegations contained in the complaint, however, a plaintiff may not rest on the pleadings, but must present evidence which, if true, would support the exercise of personal jurisdiction. Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284-85 (9th Cir. 1977).

Only Willms moves to dismiss for lack of personal jurisdiction; the corporate defendants do not dispute whether they are properly subject to jurisdiction in this court.

The fiduciary shield doctrine provides that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." Davis v. Metro Prods.,

1  Inc., 885 F.2d 515, 520 (9th Cir. 1989).  In other words, "[t]he
2  mere fact that a corporation is subject to local jurisdiction
3  does not necessarily mean its nonresident officers, directors,
4  agents, and employees are suable locally as well."  Colt Studio,
5  Inc. v. Badpuppy Enter., 75 F. Supp. 2d 1104, 1111 (C.D. Cal.
6  1999).  Though employees are not necessarily subject to liability
7  in a given jurisdiction due to the contacts of their employers,
8  "their status as employees does not somehow insulate them from
9  jurisdiction.  Each defendant's contacts with the forum State
10 must be assessed individually."  Calder v. Jones, 465 U.S. 783,
11 790 (1984).

12         The corporate form shielding an individual associated
13 with the corporation from personal jurisdiction may be ignored in
14 two circumstances: (1) where the corporation is the agent or
15 alter ego of the individual defendant; or (2) by virtue of the
16 individual's control of and direct participation in the alleged
17 activities.  Wolf Designs, Inc. v. DHR Co., 322 F. Supp. 2d 1065,
18 1072 (C.D. Cal. 2004).  Plaintiffs allege that the court has
19 personal jurisdiction over Willms because Willms personally
20 directed the activities of the corporate defendants; they no
21 longer allege that Willms is an alter ego of the corporate
22 defendants.

23         Plaintiffs allege that Willms "is the central figure in
24 the fraudulent scheme," and a "'guiding spirit' of the wrongful
25 conduct at issue."  (SAC ¶¶ 3, 14.)  Willms was allegedly
26 responsible for making all final decisions on SwipeBids' business
27 practices and policies, including marketing, terms of use,
28 disclosures, user registration, and billing practices.  (Id. ¶

1  15.)  He also allegedly made all hiring decisions.  (Id. ¶ 16.)

2      "Cases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity."  Davis, 885 F.2d at 524 n.10 (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 902 (2d Cir. 1981)).  Plaintiffs' allegations regarding Willms do nothing more in effect than track the language from Davis and Miller, with conclusory statements that he was a "guiding spirit" and "central figure" and made all final decisions.  More is required under the Supreme Court's recent decision in Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

16     If the court were to deem such conclusory allegations sufficient on a motion to dismiss, a plaintiff could force any officer of a company to defend a suit in his personal capacity simply by using the magic language that he was the "guiding spirit" behind the allegedly wrongful conduct or the "central figure in the challenged corporate activity."  The complaint must contain facts to plausibly suggest personal direction of the allegedly unlawful activities.  See id. at 1951 (a complaint must "plausibly suggest an entitlement to relief.").  Accordingly, the court will grant defendants' motion to dismiss the SAC for lack of jurisdiction over Willms.

27     B.   Motion to Dismiss under Rule 12(b)(6)

28          On a motion to dismiss, the court must accept the

7

1 | allegations in the complaint as true and draw all reasonable
2 | inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416
3 | U.S. 232, 236 (1974), overruled on other grounds by Davis v.
4 | Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322
5 | (1972).  "To survive a motion to dismiss, a complaint must
6 | contain sufficient factual matter, accepted as true, to 'state a
7 | claim to relief that is plausible on its face.'"  Iqbal, 129 S.
8 | Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
9 | 570 (2007)).  This "plausibility standard," however, "asks for
10 | more than a sheer possibility that a defendant has acted
11 | unlawfully," and "[w]here a complaint pleads facts that are
12 | 'merely consistent with' a defendant's liability, it 'stops short
13 | of the line between possibility and plausibility of entitlement
14 | to relief.'"  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550
15 | U.S. at 556-57).

16 | In their original Complaint, plaintiffs included a
17 | screenshot of a "credit card submit" page, which contained
18 | several references to a $150 membership fee.  (Compl. ¶ 17
19 | (Docket No. 1).)  In their First Amended Complaint, plaintiffs
20 | included an identical screenshot, with one difference: the
21 | section in which consumers would have entered their credit card
22 | information, with its references to the $150 membership fee, was
23 | removed.  (First Am. Compl. ¶ 25 (Docket No. 28); see May 25,
24 | 2011, Order at 11:5-12:26.)  In the SAC, plaintiffs have not
25 | included a screenshot of the relevant webpage, but instead simply
26 | allege that it "fails to disclose the existence of its membership

fees."[2]  (SAC ¶ 34.)

Plaintiffs attempt to explain the apparent inconsistencies by stating that "Plaintiffs inadvertently attached the subject screenshot (and portions thereof) twice to their Original and First Amended Complaints--the first time in error and the second deliberately to show Defendants' practice of presenting complaining customers with fabricated webpages, which actually disclosed the unauthorized membership fees in question." (Pls.' Resp. in Opp'n to Mot. to Dismiss at 1:15-19 (Docket No. 49).)  They state that the screenshot "was a duplicate of the screenshots" of the page to which consumers were allegedly sent after complaining about the fee.  (Id. at 7:20-21.)  Plaintiffs state that they never obtained a screenshot of the actual credit card submit page they viewed, and therefore could not include it in their complaint.  (Id. at 8:4-5.)

The court is naturally skeptical of this explanation for several reasons.  First, if plaintiffs never obtained a copy of the relevant webpage, the court cannot understand what page plaintiffs thought they were attaching to the Complaint and the FAC.  Second, the explanation is inconsistent with the pleadings. Even if the screenshot was included in the Complaint in error, the FAC represented that the screenshot was the one to which

---

[2] The SAC includes a different version of the initial registration page than was included in the Complaint and FAC. (SAC ¶ 29.)  The SAC version includes a graphic stating "Our players Win Lots of Prizes!  Here's just a few," with pictures of items customers have won and statements that the customers "Paid $159 for Access" to the prizes.  (Id.)  The court will not decide on a motion to dismiss whether the statement on the initial registration page that customers paid $159 for access constitutes sufficient disclosure of the membership fee.

consumers were actually directed from the registration page, (FAC ¶ 25), not one of the fabricated webpages, as plaintiffs now contend.  Third, plaintiffs have still provided no explanation for the fact that the Complaint and FAC versions of the screenshot were identical except for the removal in the FAC of the section where consumers could enter their credit card information.  However, the court will leave open the question of whether plaintiffs engaged in any sanctionable conduct until the parties can commence discovery.

As to whether plaintiffs have stated a plausible claim for relief if the allegations in the SAC are taken as true, defendants only argue that the allegations lack the requisite specificity.  Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997)).  Even when fraud is not a necessary element of a claim, when "the plaintiff [] allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," the claim is "said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)."  Id. at 1103-04.  All of plaintiffs' claims rely at least in part on the allegation that defendants fraudulently charged an undisclosed membership fee.

10

Taking plaintiffs' allegations as true, the SAC provides sufficient specificity to state a claim for relief. Plaintiffs describe the webpages they visited and the statements and omissions made by defendants regarding fees. Plaintiffs allege that they relied on the representation that their credit cards would only be used in the event that they won a prize, and that they were damaged when defendants charged a membership fee. Accordingly, the court will not dismiss plaintiffs' SAC for failure to state a claim.

C.   Motion to Strike Class Allegations

Defendants move to strike plaintiffs' class allegations, arguing that plaintiffs will be unable to prove the requirements of Federal Rule of Civil Procedure 23(a) necessary for class certification. Where class action allegations "address each of the elements of Rule 23, relate to the subject matter of the litigation, and are not redundant, immaterial, or impertinent," the court must find that the allegations--viewed in the light most favorable to plaintiffs--are sufficient to survive a motion to strike. Clark v. State Farm Mut. Auto. Ins. Co., 231 F.R.D. 405, 407 (C.D. Cal. 2005). Whether plaintiffs will be able to succeed on a motion for class certification, however, is an entirely separate matter to be decided at a later date. See Rodriguez v. Cal. Highway Patrol, 89 F. Supp. 2d 1131, 1143 (N.D. Cal. 2000) (declining to strike class allegations because "the appropriateness of [the class allegations] will be tested in the context of a motion for certification of the class"). Accordingly, the court will deny defendants' motion to strike the class action allegations.

IT IS THEREFORE ORDERED that defendants' motion to dismiss plaintiffs' Second Amended Complaint be, and the same hereby is, GRANTED as to defendant Jesse Willms;

AND IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiffs' Second Amended Complaint and to strike the class allegations be, and the same hereby is, DENIED as to all other defendants.

If plaintiffs wish to amend the complaint to allege facts sufficient to support personal jurisdiction over Willms, they may do so within twenty days of the date of this Order.

DATED:  August 19, 2011

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE